## In re MARTINEZ.

(District Court, N. D. New York. May 21, 1915.)

BANKRUPTCY ⬥161—RIGHTS VESTING IN TRUSTEE—RIGHT TO ACCOUNTING FROM FORMER ASSIGNEE.

A voluntary bankrupt, a year before the filing of his petition, assigned the goods in his store to a trustee, who sold the same and paid the proceeds pro rata to the assignor's creditors, except the shares of two, who refused to accept them, and which were therefore returned to the assignor. *Held* that, while the assignment was neither valid as a general assignment under the laws of the estate nor enforceable, yet, having been fully executed by the assignee in good faith more than four months prior to the bankruptcy, he was not liable for any part of the money to the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. ⬥161.]

In Bankruptcy. In the matter of Lawrence A. Martinez, bankrupt. On review of order of referee. Affirmed.

Review of an order of the referee on an accounting as to certain property assigned by said Martinez more than four months prior to the filing of the petition in bankruptcy to Leon C. Rhodes for the benefit of the creditors of said Martinez, and which assignment is in the form of an agreement between Martinez and said Rhodes, and contains certain stipulations and provisions not usual to an assignment for the benefit of creditors.

T. B. & L. M. Merchant, of Binghamton, N. Y., for trustee.
Leon C. Rhodes, of Binghamton, N. Y., pro se.

RAY, District Judge. On the 11th day of October, 1912, Lawrence A. Martinez was in business in the city of Binghamton, and had at his place of business, 66 Court street, a stock of jewelry, merchandise, fixtures, and appliances, and also bills receivable, and held a lease of

the store in which he was doing business. On the 11th day of October, 1912, said Lawrence A. Martinez entered into an agreement in duplicate with Leon C. Rhodes, as attorney, of the same place, which recited that Martinez was indebted to various persons, and desirous to assign, transfer, and set over to Rhodes, as trustee, his property in order to secure the creditors of the said Martinez. The agreement then provides that in consideration of $1 and the premises recited the said party of the first part, Martinez, "does hereby assign, transfer, set over, and deliver unto the party of the second part, as trustee, his successor and assigns, all of the assets of said party of the first part which are located and situated at the store of said party of the first part." Then follows a general description. Then follows a provision that the transfer is not to include the tools and work bench belonging to the party of the first part, "but is to include any and all other assets, merchandise, fixtures, and appliances belonging to said party of the first part and now located at or used in connection with his said store and business at No. 66 Court street, in said city of Binghamton," which was the place of business aforesaid. .

The agreement then recited that Rhodes was to take possession of and sell and reduce to cash in his discretion the said property, and sell for cash or for cash and on credit and from the proceeds pay the expenses of the trust, including rent, clerk hire, legal expenses, and other expenses incident to the performance of his said duties as trustee, and distribute the balance remaining in his hands ratably among creditors according to the just amounts of their various claims in full settlement and discharge of the same. He was to pay over the surplus, if any remaining, to the party of the first part. For this purpose Martinez appointed Rhodes the said trustee to be his attorney, in his name and on his behalf to sue for and collect outstanding accounts, and to make, execute, and deliver necessary deeds of conveyances.

This agreement does not recite that Martinez had any other property, but by its terms it is confined in its operation to the specific property referred to. This agreement then provided that Rhodes should and would employ Martinez as his clerk and assistant at the store during the continuance of the business at the weekly compensation of $25, and Martinez on his part agreed to faithfully and efficiently perform his duties as such employé.

The agreement also provided that Rhodes would accept as his compensation for his services as trustee 5 per centum of the gross proceeds arising from the conduct of the business and the sale of the property. This agreement then provided that Rhodes, as trustee, should not be required to file an account in any court, but that he should report and make final written account to the creditors of said company, meaning Martinez, and that Rhodes should not be under any personal liability of any nature or kind because of error and mistake on his part in making payment to creditors in the conduct of the business or in the disposition thereof, provided he should exercise due diligence and discretion in the conduct and disposition of said business and in determining the correct amount of the claims of creditors. It was also agreed that Rhodes should not in any event be liable for any failure or default of any nature or kind because of his acts or of

the acts of Martinez, or because of the acts of the employés, agents, or servants of the said Rhodes in connection with the performance of the obligations of the trust.

The agreement then provided that the contract and agreement should not be considered as an assignment under the laws of the state of New York, but purely as a mutual and voluntary agreement for the protection and benefit of the creditors of the said company, and that the contract should not be considered as an act of bankruptcy. The agreement then provided that the same was to become of full force, virtue, and effect from and after the date when the same should be assented to and agreed to by all the creditors of Martinez, excepting such of said creditors not assenting thereto whose aggregate claims should amount to less than the sum of $500. The assent of creditors was to be evidenced by an instrument in writing attached to and forming a part of the agreement. Such a consent, not signed, was attached to the agreement, which was duly signed by both parties and acknowledged before a notary public. Martinez agreed to execute any further instruments or writings necessary to enable Rhodes to perform his contracts and agreements as specified.

It requires no citation of authority to demonstrate that as to creditors generally this agreement was void and in fraud of creditors as a general assignment under the statutes of the state of New York. All creditors, however, assented to its terms, except two. Rhodes acted under the agreement without the assent of these two creditors, and reduced the property to money and made an equal dividend of 44.3 per cent. and paid same to all except the two nonassenting creditors. These creditors were Charles W. Keeler, who had a valid claim of $900, and H. Fein & Co., who had a claim of $141.12. On the basis of an equal dividend after deducting expenses, etc., Keeler was entitled to $398.78, and H. Fein & Co. were entitled to a dividend of $62.52. The creditors who were paid their dividends have not filed claims against the bankrupt estate. H. Fein & Co. refused to accept their dividend made under this agreement, and Rhodes still holds same. Keeler refused to accept his dividend made under the agreement aforesaid, and after a time Rhodes paid the dividend made by him for the benefit of Keeler over to the assignor, Martinez. The agreement aforesaid was never recorded, and neither of the parties thereto treated same as a general assignment for the benefit of creditors. None of the proceedings required by statute in the case of a general assignment for the benefit of creditors were taken.

On the 17th day of September, 1913, Martinez filed a voluntary petition in bankruptcy, and he was adjudicated on the 18th day of September, 1913. This was more than four months after the making of the agreement aforesaid and the doing of the acts referred to. Rhodes returned the $398.78 to Martinez on the 17th day of April, 1913, which was more than four months prior to the filing of the petition in bankruptcy. The trustee in bankruptcy of Martinez claims that the title to the property mentioned vested in Rhodes as assignee and trustee for the benefit of creditors, and that Rhodes is accountable to him therefor as such to the extent at least of the money not paid out and expended

by him in the execution of the trust and in payment of necessary and legitimate expenses including commissions; that is, the trustee in bankruptcy contends that Rhodes is not protected by the payment of the $398.78 to the assignor, Martinez, but is accountable therefor, and must pay that amount to him, as well as the $62.52 which Rhodes now has and is ready and willing to turn over to the trustee in bankruptcy.

Rhodes contends that this was an agreement for the benefit of all creditors who saw fit to avail themselves of it, made between himself and Martinez more than four months prior to the bankruptcy, and that it was not a general assignment for the benefit of creditors, but a mere mutual agreement between himself and Martinez, and that while creditors might have enforced it, or have enforced their rights under it, if any, title to the property did not vest in him to the exclusion of Martinez, and that, when Keeler refused his dividend of $398.78 under the agreement between Rhodes and Martinez, he (Rhodes) had the right and that it was his duty to return same to Martinez. Rhodes also contends that if the agreement was valid and binding and enforceable by creditors, as it was made more than four months prior to the bankruptcy, if the title vested in Rhodes, he (Rhodes) now holds such money, if chargeable with it at all, for the benefit of Keeler, and that no one but Keeler can collect same from him. Rhodes contends that in no event is the trustee in bankruptcy entitled to the dividend made under the agreement for the benefit of Keeler.

No action or proceeding has been taken to have the agreement between Martinez and Rhodes declared fraudulent or void. The trustee in bankruptcy stands upon the proposition that such agreement was valid, and valid as and enforceable as a general assignment for the benefit of creditors. Some stress has been laid upon the proposition that Martinez and Rhodes agreed that the instrument referred to should not be considered or treated as a general assignment for the benefit of creditors. It goes without saying that the assignor and assignee in a general assignment for the benefit of creditors, one having all the attributes of a general assignment for the benefit of creditors and properly executed, could not destroy or weaken the same by an agreement between themselves, even if inserted in the instrument, that it should not be considered or treated or operate as a general assignment for the benefit of creditors. Should the assignor and assignee in a general assignment for the benefit of creditors, having all the attributes of such an instrument and being properly executed, insert therein an agreement that the assignee should not be accountable in any court, such provision would be void. The operation of the statutes of the state of New York in the case of a general assignment for the benefit of creditors cannot be varied or defeated by an agreement of the parties that such statute shall not apply.

This agreement was made more than four months prior to the filing of the petition in bankruptcy, and was fully executed as to all of the creditors of Martinez except two. These two did not assent thereto, and they were under no obligation to assent thereto. It does not appear that they ever have assented, or that they have claimed their dividend thereunder. In fact, Keeler has declined to take his dividend. Rhodes

had no power to compel Keeler to accept such dividend. The agreement itself expressly provided that it should become valid and enforceable and binding only on condition that it was accepted by all the creditors excepting those whose aggregate claims were less than $500. According to its terms it never became operative, as these two creditors, whose claims exceeded $500, declined to assent thereto. Keeler and H. Fein & Co. might have repudiated the whole transaction. They, or either of them, might have sued Martinez, obtained judgment, issued execution, and levied upon this property in the hands of Rhodes. If they could not have done this, they could have filed a petition in bankruptcy against Martinez in bankruptcy proceedings taken within four months after the making of the agreement in question, and such agreement would have been superseded by the bankruptcy, and the entire property would have been recoverable by the trustee in bankruptcy.

In Cohen v. American Surety Co., 192 N. Y. 227, 84 N. E. 947, it is held that:

"Where, within four months after the making of a general assignment for the benefit of creditors, the assignor, on the petition of certain of his creditors, is adjudged a bankrupt, and a trustee in bankruptcy is appointed, the adjudication in bankruptcy supersedes the general assignment, which becomes void as against the trustee in so far as it interferes with his administering the property assigned."

It was also held that the trustee in bankruptcy becomes vested with the title to the property in the hands of the assignee under the general assignment, and that it is the duty of the trustee in bankruptcy to take such property into his possession and collect from the assignee under the general assignment any money in his hands belonging to the estate of the bankrupt; that is, the title to property of the bankrupt remains in the bankrupt and passes to his trustee in bankruptcy as to an assignee under a general assignment made by the bankrupt within four months of his bankruptcy. The case cited holds that it is the duty of the assignee under a general assignment for the benefit of creditors to account to the trustee in bankruptcy for all moneys received by him, and that his failure so to do constitutes a violation of the bond required to be filed under the provisions of section 5 of the general assignment act as security for the faithful performance of his duties as such assignee. However, in this case this assignment, whether it was a general assignment for the benefit of creditors or a special assignment, was not made within four months of the bankruptcy.

This court is of the opinion that this agreement was not a general assignment for the benefit of the creditors of Martinez. It was an assignment for the benefit of creditors on the face of it. It was to become in full force and effective when all the creditors, except it might be a few whose claims did not aggregate $500, should assent thereto. It never became effective. However, the parties thereto acted under it, and Rhodes, acting with authority from Martinez, converted the property into money and applied the proceeds to the payment of such of the creditors of Martinez as would accept their ratable and proportionate shares thereof. These creditors, having assented and received the benefits, cannot complain. They do not complain. The transaction, so

far as they are concerned, was closed more than four months prior to the filing of the petition in bankruptcy by Martinez. There was no fraud in that transaction. It was an equal distribution of the property of Martinez among his creditors. There is no question of preference, as no one was preferred. All shared alike. The title to all the money paid over to creditors passed to the creditors. Keeler and H. Fein & Co. refused to recognize the transaction; that is, refused to assent to and accept benefits under the agreement, but they cannot now set aside what was done under that agreement except fraud be shown. No attempt has been made to prove fraud or fraudulent intent or purpose. Rhodes had no right to the money which Keeler refused to accept. He was under no contractual relation with Keeler. Keeler refused to avail himself of the agreement. Keeler refused the money. Rhodes had no title in himself, and Keeler repudiated the trusteeship which Martinez attempted to create in his favor.

What, then, should Rhodes do? Was it his duty to retain the money for further proceedings? He was not a trustee for Keeler and owed him no obligation. He returned the money under these circumstances to the owner thereof, leaving it open to Keeler to sue Martinez, obtain judgment and enforce same in due course. When he returned the money to Martinez, Rhodes ceased to be responsible therefor; at least, so far as Martinez and his trustee in bankruptcy is concerned, he ceased to be responsible. Martinez had had the money returned to him long before proceedings in bankruptcy were taken. Martinez had received it. The trustee in bankruptcy took title to the property which belonged to Martinez, or in which he had an interest, so far as that interest went at the date of the filing of the petition in bankruptcy. He took it in the same plight and condition and subject to the same equities it was in when the petition in bankruptcy was filed. Rhodes, more than four months before the filing of the petition in bankruptcy, had closed his trusteeship of that fund by returning it to Martinez, and Martinez, the owner of the fund, had voluntarily received it. The transaction was closed, without fraud, or intent to cheat or defraud any one, more than four months prior to the bankruptcy. I see no theory upon which it can be held that Rhodes is accountable to the trustee in bankruptcy for the $398.78 returned to Martinez by Rhodes more than four months prior to the bankruptcy, and which sum was retained and set aside by Rhodes, when acting under the agreement, for the benefit of Keeler, and which Keeler refused to accept. The assignment made by Martinez to Rhodes did not purport to operate upon all his property, and for that reason alone, I think, was not a general assignment for the benefit of creditors.

In Cohen v. American Surety Co., supra, the court said:

"The general assignment act of the state of New York, like the Bankruptcy Act, is designed to distribute all of the assets of a debtor among his creditors."

As this was not a general assignment for the benefit of creditors, and because of many provisions therein inserted in violation of the general assignment law, it must be treated as a special agreement and assignment, operative only in so far as the parties and creditors assented

thereto and accepted benefits thereunder. The trustee in bankruptcy occupies no better position than did Martinez at the time of the filing of the petition in bankruptcy. It is not claimed that the trustee in bankruptcy represents any creditor or creditors of Martinez who were excluded from benefits under the agreement referred to. He represents those creditors who refused to accept benefits under it, and the trustee in bankruptcy and these creditors find themselves at liberty to appropriate all of the property of Martinez, unhampered by any act of Martinez or of Rhodes committed within four months of the bankruptcy, and, in any event, all they can complain of is that more than four months prior to the bankruptcy Martinez applied, through Rhodes, his property in his business and store to the payment of his creditors pro rata, except that two refused to accept their pro rata share. The money belonging to Martinez that was set aside for one of them in the hands of Rhodes, and which the creditor refused to accept, was returned to Martinez, and it would be unjust to compel Rhodes to pay that amount again to his trustee in bankruptcy. At the time of the bankruptcy Rhodes did not hold it for Martinez, and he did not owe Martinez that sum of money.

The referee has ordered that Rhodes pay over to the trustee in bankruptcy the $62.52 set apart for H. Fein & Co. This Rhodes is willing to do.

There is no complaint that Rhodes has failed to account for all the money and property of Martinez that came into his hands. The correctness of his accounts is not questioned. There is no charge that he lost, or misappropriated, or misapplied any of the property, or any of the proceeds thereof. The claim is that the amount set apart as the dividend for the benefit of Keeler should not have been returned to Martinez, and that Rhodes is accountable therefor to the trustee in bankruptcy, on the ground that title had vested in Rhodes, as assignee under the general assignment for the benefit of creditors.

The order of the referee is affirmed.